Good morning, Your Honors. I am Martin Robles Avila for the petitioner Parminder Singh Bhagtana. Thank you for the opportunity to present this case. Let me just start with a brief overview of the relevant dates here. The petitioner entered the United States November 2, 2002. About a month later, on December 6, 2002, he filed his application for asylum affirmatively with the agency. He was apparently fingerprinted on April 13, 2004, in connection with that affirmative application. The application was then referred to the immigration judge June 9, 2005. A little over a month later, he has his very first hearing, an initial master hearing, on July 29, 2005. At that hearing, there is no interpreter. And so the judge, presumably because there was not an interpreter at the hearing, the judge delegates to the petitioner's counsel the obligation. In fact, he actually says, this is at page 75, I'll place upon you the responsibility of advising the respondent when and how to have his fingerprints taken, and the consequences of failing to do so, namely that his application will be deemed abandoned. And the petitioner's counsel says, yes, Your Honor. And the judge says, and I know you're familiar with the court rules and the deadlines contained therein. As a question, of course, counsel says yes. The hearing is set for February 27, 2006. And at that point, it's identified that he has not taken his fingerprints. And the reason was due to some miscommunication with his counsel. The two offices, counsel had two offices apparently. And when he was being prepared, there was some kind of miscommunication apparently. And as a result of that, the judge tells him at the next hearing, sir, unfortunately, the law provides that if you don't have your fingerprints taken, I'm required to find that you've given up your request. And the judge finds all the applications abandoned, orders removal, and that's why we're here before you today. And you forgot a step. Didn't counsel ask for a continuance to get the fingerprints? Yes, sir. He did. Absolutely.  Pretty important step. He did. He did ask for a continuance. Part of the continuance was for an adjustment of status, which he was not eligible for. And we're not making that argument. The other was he asked for a continuance so that he could get the fingerprints taken. Mr. Robles, let me ask you this. Mr. Bactana appeared at the first 2005, July 29, 2005, immigration hearing with counsel. Correct, Your Honor. And is there anything in the record that would indicate that his counsel didn't possess the necessary language skills to communicate with Mr. Bactana? There is nothing in the record that would suggest that, Your Honor. I mean, you could maybe make assumptions based on his name. You might make you might. Well, help me out on the law. When an immigration judge tells counsel for an alien that something is required, is there some rule that that notification isn't effective unless the government can further prove that, A, counsel spoke the same language as the alien, and, B, that counsel actually communicated it to the alien? Or is it assumed that by telling the attorney, it gets to the counsel or gets to the alien? I think that's a very important question. And the judge mentioned this. And I think that the Board of Immigration Appeals, in my opinion, they conducted a de novo review, and they completely separated themselves from the board's decision. The board did not say we're going to affirm the I.J.'s decision based on the reasons contained therein. The board does its own discussion. But I think the rule that you're talking about is ACFR 292.5a, which says a number of things. But in our opinion, and we refer to this in our brief, it doesn't apply to this circumstance. It refers to notice, service, making of a motion, filing of a document, or performing or waiving the performance of an act. So on the attorney is deemed to be notice, service, or on the client. Precisely, Your Honor. Precisely. And I don't think any of those things would cover this specific situation where we're talking about the consequences of him not doing something. Because it's not as if the judge could waive the performance. No, Your Honor, we're not going to do the fingerprint requirement. I'm going to waive that on behalf of my Respondent. No, I'm just talking about, do we presume communication of the judge's statement to the alien because it's been used? In this case, I think you're absolutely right. You have to presume that. And that's the only way. And I think that that's interesting. One of the things in the decision, he assumes the whole time and says that he was advised through counsel. But he never asked counsel, did you advise him? That's never a part of the record. He simply assumes. And then, as I point out in the brief, Isn't that a very practical way to proceed in legal proceedings? I mean, think of the burden you're putting on the government. First, you say, counsel, the date is, the date of the next hearing is March 1st. Now, first of all, do you speak the language of your client? Secondly, have you told him it's March 1st? The first thing the client might say is attorney-client privilege. I don't want my client telling, testifying as to what he's told me or not. It's quite a burden, isn't it? It is a burden, Your Honor. I mean, but what is the law on this? Don't we presume as a matter of law that when a counsel is told something, his client is told that very same thing? I think that that, if the judge had proceeded in the manner that you just did, Your Honor, the case would be weaker. But he didn't proceed in that fashion. How so? He said, I'm advising you to get your petitioner to give his fingerprints. Right? What's ambiguous about that? Well, there's nothing ambiguous about that, except when you go to the actual hearing where it turns out that he didn't get the fingerprints taken. None of that, none of that. We know he didn't get the fingerprints taken, but you're not saying that the alien didn't know that he had to have his fingerprints taken. We know that the alien knew that he had to have his fingerprints taken, but that only gets to our second argument, and that is that the judge abused his discretion and refused him to continue the case where it was only the second hearing, where the alien himself put himself into the process under Simbering, this Court's case. The Court said he had no motive to avoid, failing to avoid appearing at a hearing, and just like here, he had no reason to avoid getting his fingerprints. He'd done it before. Your position is not, he wasn't told to get fingerprints. Your position is he was told to get fingerprints, but for whatever reason he didn't get them, and he asked for a reasonable continuous. It was abuse of discretion not to give him a reasonable continuous. Right. And there was a miscommunication. And I think that's one of the other arguments that we raised, is that the IJ, now, did the IJ know the Board ever get to exercise discretion as to whether he established good cause or not? The judge simply refers to the fact that he didn't get the fingerprints taken. He then says, I'm required to find that you've abandoned your applications. The judge didn't have the benefit at that time of Cooey. Right. That's true, Your Honor. That's absolutely right. But he never exercised discretion. And by the time you get to the Board, I allege that the Board misrepresented the facts. The Board says the Respondent was informed by the immigration judge of the requirement to submit fingerprints. He was advised that they'd be abandoned, and he didn't do so. But that's not true. We know that's not true, because the transcript belies that. The fact was the IJ gave his attorney the obligation to do it, asked him to do it, and that didn't happen. And then the attorney comes in and asks for continuance. And we know that the Petitioner knows of the requirement, because he says, yeah, we discussed that, and I told him that I had done it the year before, and they misunderstood it as, say, in three or four months before. Your Honor, I have a minute and a half. I'd like to defer if I could. Thank you, Mary. We'll hear from the Attorney General. Good morning, Your Honors. May it please the Court. My name is Edith Yacone, and I represent the Respondent, Attorney General of the United States. This Court should deny the petition for review, as Mr. Bakhtanov failed to demonstrate that the immigration judge abused his discretion in denying a continuance. Whereas here the Board issues its own decision, as opposed to deferring to the decision of the immigration judge, the Court reviews the decision of the Board and not that of the immigration judge. A denial of a continuance is reviewed for abuse of discretion. In applying the abuse of discretion standard, this Court should only reverse the agency's decision if it is arbitrary, irrational, or contrary to law. The government's position in this case is that the immigration judge did not abuse his discretion in deeming Petitioner's application for relief from removal to be abandoned. In this case --" Sotomayor, should we be thinking about doing a remand to see what the Board would do in light of CUI, or however you pronounce that? We've remanded several cases just to let the Board take a look at that. I do understand, Your Honor. And there is a distinction in this case between the other cases that you're referring to, and that is that in this case, the regulations, which came out in 2005, were applicable to all of the hearings. Now, in CUI, the immigration judge did not have the luxury of applying those regulations because they didn't exist. This case was heard in 2004. Is that right? The master calendar hearing was July 29, 2005, which is after the effective date of April 1, 2005, for those regulations, including 1003.47c and d, and 1208.10. And in CUI, the Court said that the IJ arbitrarily invoked an ambiguous rule, and it relied heavily on the fact that at that time, prior to 2005, the regulations were unclear with respect to the area of fingerprinting. Now, in this case, the issue of fingerprinting was very clear because the Executive Office for Immigration Review had issued their regulations, and so the immigration judge and Petitioner both knew of the obligation. Now, to address the issue of notice to the attorney of record, the first thing I'd like to bring to the Court's attention is that Petitioner, in appealing to the Board of Immigration Appeals, does not make an issue of notice. If the Court looks to pages 14 to 22, which is the statement, excuse me, the brief on appeal to the Board, or page 52 to 55, which is the statement in addition to the notice to appeal, there are four main issues which are highlighted by both of those with biometrics instructions. In other words, his argument to the Board of Immigration Appeals was that his actions were in compliance with the regulations, not that notice was improper, but that his actions were in compliance. He does make a good cause argument, but he does not make an argument with respect to notice, and this is an issue that was brought up for the first time in Petitioner's opening brief to this Court. So the Board did not have the ability to consider this issue. As such, they obviously did not consider the issue. Nevertheless, the government has addressed the issue on page 16 of our brief and said that in our system of representative, excuse me, in our representative system, it is common that notice to a representative is notice to an alien. And as such, the government's position is that notice was proper in this case. The considerations, as I understand them, is whether the evidence would be important, it clearly would be here, and whether it's inconvenient to the Court to have allowed a continuance, and also to look at the number of continuances that have been had. Now, there's one other requirement, which is to look at whether the Petitioner's conduct was unreasonable. And I think that's where this centers. And the fact that his counsel fouled it all up would seem to suggest that maybe this Petitioner's conduct was not unreasonable. I understand, Your Honor, and you're citing to Barris v. INS, which states those four factors, which have been applied in Cui as well. So he seems to meet three of them, but the fourth one is the one that's really That's correct. The center of this case relates to that one requirement, considering whether the need for a continuance is based upon the alien's unreasonable conduct. And in this case, the government's argument is that notice was proper in this case, and that when given an opportunity to explain, and the immigration judge did first review the tapes to make sure that he gave the proper notice, he went back and listened to them in front of counsel in immigration court, he verified that notice was proper, and then he said, Counsel, would you like to explain? And then he swore Petitioner and said, Petitioner, explain, please, what had happened here such that you didn't complete your fingerprints? And there was some vague story which was given about miscommunication between Law Office I and Law Office II of the same law firm. And then the immigration judge turned to counsel and said, Counsel, do you wish to question Petitioner further about this issue? And his attorney at that time said no. She did not wish to further clarify the issue on the record. So based on the record, the government's position is that it was unreasonable under those circumstances. There was a motion for continuance. That is correct. So we also ---- Did the judge show that he was displeased with the basis for the motion for continuance? What was the grounds for the motion for continuance? Well, the Petitioner had said that he had wanted to file an application for adjustment of status, and he also requested a continuance to get the fingerprints done for both the adjustment application and the asylum application. But adjustment is not before this Court, and Petitioner concedes it's not eligible. So one of the reasons why he hadn't had his fingerprints taken yet was because he had yet ---- he was going to apply for adjustment, and he wanted his fingerprints taken for adjustment. No. He had brought up the issue of adjustment for the first time in the second hearing. And so the fingerprints, of course, were relevant for applications including asylum and adjustment, but that was not the reason for his failure to complete the fingerprinting. And the only reason was miscommunication among the attorney's offices between Fresno and wherever the hearing was taking place. The statement that he made and that his attorney made at that hearing was that there was some miscommunication, and someone had called someone in the opposite offices, and it was assumed that he had completed the fingerprints. How long a continuance was requested? As far as I recall, there was no time limit on the continuance that was requested. Was there any objection? It was a general continuance. Was there any objection by the government at that point to the motion for continuance? The government made objections based on the ---- both the motion for the continuance and particularly with respect to the adjustment application. What was the basis of the objection to the motion for continuance? As far as I recall, the central contention that the government had was relating actually to the adjustment application because Petitioner had not filed an application at the master calendar hearing or indicated an intent to do so, and he was not eligible in any case. I mean, what I'm saying is that did the government say, well, we can't have a continuance because we have a certain schedule to meet, or we only have certain witnesses which can't be brought other than this date? Were any reasons of fact given for the opposition for objection to continuance? The government did file a motion to pretermit, and as far as I recall, did not provide any specific details as to the basis other than their discussion of adjustment of status and Petitioner's ineligibility thereto. So the answer is there were no facts stated by the government as a basis for an objection to the continuance to an indefinite time? That is correct, but the decision was ultimately made by the immigration judge and ---- I think you've answered my question. Okay. Sure. If Your Honors have no further questions, I'll sum up. Are there any further questions? This Court should deny the petition for review. The immigration judge did not abuse his discretion in denying Mr. Bagtan his request for a continuance. As such, the Court should deny the petition for review. Thank you, Your Honors. Thank you for the argument. Mr. Robles, rebuttal. Just a brief point. The IJ didn't really exercise discretion at all. I mean, you can look at it in hindsight and say, well, obviously, he exercised his discretion. He denied the continuance, but he didn't explain why he denied the continuance. He simply said you failed to get your fingerprints taken. There is no good cause. But there was good cause, miscommunication. Why isn't miscommunication in the Attorney's Office a good cause to find under these circumstances that a continuance was warranted where it was only the second hearing It had been referred June 2005. A month later, the first hearing without an interpreter. And then February 2006, it's the individual hearing. I mean, that's a very short time frame. And the petitioner said, well, if it's the fingerprints, I'll get them taken today. I mean, it was a miscommunication. And I think that the certain And he had his fingerprints taken somehow. He had had his fingerprints taken precisely. No showing of recalcitrance. Right. And I mean, often a hearing could go forward and then the judge could defer a decision based on the results of the fingerprints. But I think that the IJ's actions here were an abuse of discretion. And we ask that you grant the petition for review. Thank you, Your Honor. If there's no other questions. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Fletcher B. , Clifton, Bea